UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| SKY ZONE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 3:11-cv-0141-LRH-WGC |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| JERRY RAYMOND, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

This is a claim construction order for United States Patent number 5,624,122 ("the '122 patent"). The parties have submitted three terms for construction, one that the parties agreed to, and two that are in dispute. The parties submitted their opening claim construction briefs on September 28, 2011, Doc. #43; Doc. #44,[1] and responses on November 11, 2011. Doc. #51; Doc. #52. After these submissions, Sky Zone declared bankruptcy (Doc. #63), and the Court recognized an automatic stay pursuant to Section 362(a) of the Bankruptcy Code (Doc. #73).

On September 17, 2014, Plaintiff Sky Zone, LLC ("Sky Zone") filed a Notice of Supplemental Authority. Doc. #77. Defendants Jerry Raymond *et al.* (collectively "Sky High") filed an objection, Doc. #79, to which Sky Zone replied. Doc. #82. On September 23, 2014, Sky Zone filed a Notice of Claim Construction Order. Doc. #80. Sky High filed an objection, Doc. #81, to which Sky Zone replied. Doc. #84.

---

[1] Refers to the court's docket number.

On September 19, 2014, Sky High filed a Notice of Supplemental Intrinsic Evidence. Doc. #78. Sky Zone filed an objection, Doc. #83, to which Sky High replied. Doc. #85.

The Court held a *Markman* claim construction hearing on September 30, 2014. At the request of the Court, the parties submitted a Joint List of Claim Construction Exhibits on October 3, 2014. Doc. #87.

I.   **Facts and Background**

Plaintiff Sky Zone is a Nevada limited liability company that owns the '122 patent, which discloses an invention for "a resilient playing field comprised of trampoline panels adjacent to one another on a grid of steel cables." Doc. #43 at 2. The '122 patent explains that "the resilient field enables games where participants can perform jumping feats not possible on ground." *Id.* A copy of the patent, titled "Sport Game and Field" is attached as Exhibit A to the complaint. Doc. #1, Exhibit A.

Sky High Sports is a limited liability company that provides trampoline centers at numerous locations throughout California, Oregon, and Washington. Doc. #34 ¶6. Prior to opening these trampoline centers, Defendant Jerry Raymond, a managing member of Sky High Sports, visited Sky Zone's facility in Las Vegas and discussed franchising opportunities. *Id.* ¶7.

On February 25, 2011, Sky Zone filed a complaint against Sky High for patent infringement, alleging that Sky High's facilities infringed claims 1-4 of the '122 patent. Doc. #1 ¶36. In its Answer, filed on April 22, 2011, Sky High asserted six affirmative defenses to Sky Zone's claim of infringement: (1) failure to state facts sufficient to constitute a cause of action; (2) estoppel; (3) waiver; (4) laches; (5) unclean hands; and (6) statute of limitations. Doc. #34 at 5.

Sky High also asserted three counterclaims against Sky Zone: (1) declaratory judgment of noninfringement; (2) declaratory judgment of invalidity; and (3) tortious interference with prospective business relations. *Id.* at 9-10. In its Answer to Sky High's counterclaims, Sky Zone asserted eleven affirmative defenses: (1) failure to state a claim upon which relief may be granted; (2) unclean hands; (3) valid patent; (4) truthfulness; (5) economic interest; (6) interest as

competitor in industry; (7) failure to mitigate damages and/or losses claimed; (8) lack of causation; (9) assumption of risk; (10) good faith; and (11) entitlement to offset.  Doc. #36 at 4-5.

Claim 1 of the '122 patent, which includes the terms at issue here, describes:

> A supported surface for transitional movement, said surface being formed of:
> a.  a grid of elongated steel cables disposed above a ground level, said grid being formed of a plurality of first parallel cables spaced from each other, and a plurality of second steel cables disposed transversely of and in abutment with the first cables, said second steel cables being parallel to, and spaced from, each other, said first and second cables defining a plurality of open spaces between the cables;
> b.  means to support each of said cables at their respective extremities;
> c.  a plurality of first panels, each of said first panels being formed of a yieldable heavy fabric having edges and each panel being configured to space its edges from either a first or second cable defining space;
> d.  a plurality of resilient elements extending outwardly from each edge of each panel for attachment to the nearest of said first and second cables, thereby to support the panel on said first or second cables within a space defined by said cables; and
> e.  a plurality of elongated cover means, the last said means each comprising a padded sheet material having a width greater than the distance between parallel edges of adjacently disposed panels, each said cover means being disposed over at least a portion of one of the first and second cables and the resilient means attached thereto and extending from the edge of a first panel.

Doc. #1, Exhibit A, '122 Patent 5:4-30.

The parties have agreed to the construction of the term "steel cable" but dispute the construction of the terms "elongated" and "means to support each of said cables at their respective extremities."  After carefully considering the briefs and other materials submitted by the parties, the record before the court, and the arguments of counsel at the September 30, 2014 *Markman* claim construction hearing, the Court issues this order construing the claim terms.

**II.    Legal Standard**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Accordingly, the purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v.*

3

*Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The court, rather than the jury, must resolve a dispute raised by the parties regarding the proper scope of the claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citations omitted).

The "objective baseline from which to begin claim interpretation" is "the ordinary and customary meaning of a claim term." *Phillips*, 415 F.3d at 1312-13. This refers to "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. The patent is read "not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* In certain cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. In other cases, the claim term may have a particular meaning in the field of art that is not immediately clear. The court must examine those sources that are available to the public to show what a person skilled in the art would have understood the disputed claim language to mean. *Id.* Those sources include "words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id*.

The claim language bears considerable importance to the claim interpretation. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The claims themselves can provide substantial guidance to the meaning of a claim. *Phillips*, 415 F.3d at 1314-15. The "context in which a term is used in the asserted claims can often illuminate the meaning of the same term in other claims." *Id.* at 1314. Furthermore, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1315.

///

4

The claims must also be read in view of the specification. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp.*, 90 F.3d at 1582). The specification, as required by statute, describes the process of making and using the invention, and "[t]hus claims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). When scrutinizing the specification, however, a court must distinguish "between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Phillips*, 415 F.3d at 1323. Only the former is permissible.

Additionally, the court may consider the prosecution history, which includes the record of proceedings before the Patent and Trademark Office ("PTO"), including any references to prior art cited during prosecution. *Id.* at 1317. The prosecution history can demonstrate how the PTO and the inventor understood the patent. *Id.* In particular, the court should exclude any interpretation disclaimed by the inventor during the patent's examination. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005). The purpose of this rule is to "protect[] the public's reliance on definitive statements made during prosecution by precluding patentees from recapturing through claim interpretation specific meanings [clearly and unmistakably] disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) (citations and internal quotations omitted).

When a patent term describes a function to be performed and a means to perform that function, construction of that term is governed by 35 U.S.C. § 112 ¶6, under which "courts must first identify the claimed function using traditional tools of claim construction and then determine the structure corresponding to the identified function." *Id.* at 1330. When interpreting a means-plus-function claim with the patent specification and other intrinsic evidence, district courts cannot limit the patent by "adopting a function different from that explicitly recited in the claim." *Micro Chem., Inc. v. Great Plains Chem. Co, Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

Finally, a court may consider extrinsic evidence, such as dictionaries, expert and inventor testimony, and learned treaties to construct a claim term. *Phillips*, 415 F.3d at 1317, 1319. However, their use should be limited to edification purposes: "while extrinsic evidence can shed useful light on the relevant art, the Federal Circuit has explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317.

**III.    Claim Construction**

   **A.   Person of Ordinary Skill**

The only proffered definition of a person of ordinary skill in the art comes from Sky Zone's retained expert, Dr. Scott A. Schroeder,[2] who provided a declaration in support of Sky Zone's opening claim construction brief. Doc. #45 ("Schroeder Decl."). In said declaration, Dr. Schroeder opines that a person of ordinary skill in the relevant art on the effective filing date of the '122 patent "would have possessed [(]1) work experience in trampoline design, or (2) a Bachelor of Science degree or higher (such as a Master's Degree and/or Ph.D.) in Mechanical Engineering, with less industrial experience." *Id.* ¶7. For purposes of this claim construction order, the Court accepts Dr. Schroeder's definition of a person of ordinary skill in the relevant art.

   **B.   "Steel Cable"**

The parties agree to the construction of the term "steel cable," which appears in claims 1, 3, and 4 of the '122 patent. The agreed upon construction for this term is "steel wire rope or chain." Doc. #43 at 8-9; Doc #44 at 5. The Court agrees that this is the ordinary and customary meaning of the term "steel cable," and therefore adopts the construction "steel wire rope or chain."

///

///

///

---

[2] Dr. Schroeder is a Managing Engineer in the Mechanical Engineering practice of Exponent Engineering and Scientific Consulting. Doc. #45, Exhibit A. Dr. Schroeder's "areas of expertise include stress analysis, material science, fatigue and fracture, finite element analysis, powder metallurgy, rapid prototyping, mechanics of electronic packaging, metallic and ceramic composites, and creep-fatigue interactions." *Id.*

C. "Elongated"

| Sky Zone's Proposed Construction | Sky High's Proposed Construction |
|---|---|
| "long in relation to its width" | "stretched, placed in tension" |

The parties disagree as to the construction of the term "elongated," which appears in claims 1(a) and 1(e) of the '122 patent. Sky Zone stresses that the term "elongated" "is not a technical term of art, and does not require elaborate interpretation." Doc. #44 at 8. To support its contention that "elongated" shall be construed as "long in relation to its width," Sky Zone refers to the language of the patent figures and accompanying text, which describe a "planar rectangular field [] 155 feet in length by 75 feet in width." and "[p]arallel longitudinal cables." Doc. #44 at 8; '122 Patent, 3:55-56. Sky Zone argues that in the context of the '122 patent, a person of ordinary skill in the art would understand the word "elongated" to mean simply "long." Doc. #44 at 8; *see* Schroeder Decl. ¶9 ("[T]he word would have been commonly understood, including by one of ordinary skill in the art at that time to mean, in the context of the '122 Patent, 'long, in relation to its width,' in other words, 'slender, having more length than width.'").

Sky High stresses the importance of context to support its proposed construction of elongated. Specifically, Sky High notes that claim 1 refers to "a grid of elongated steel cables disposed above ground level" and dependent claim 3 states that the cables are secured "to extend." Doc. #43 at 11-12. Sky High argues that this context shows that "[i]n order for the cables to be elongated or extended, they must be stretched or placed in tension." *Id.* at 12. Sky High argues further that this context indicates that tensile force is inherent in the patent terms: "[w]ithout the cables being stretched or placed in tension, the springs and cables could not be extended and the grid would collapse." *Id.* Sky Zone argues that Sky High's proposed construction departs from the "widely accepted meaning" of the term in an attempt "to introduce the limitation of a tensile force." Doc. #44 at 8.

The parties also offer extrinsic evidence in the form of dictionary definitions to support their proposed constructions. *See Phillips*, 415 F.3d at 1318 ("[D]ictionaries and treatises can be

7

useful in claim construction."). Sky Zone offers that the Oxford Dictionaries define "elongated" as "unusually long in relation to its width." Doc. #44 at 9. Sky High offers the Webster's Seventh New Collegiate Dictionary, which includes "to extend the length of" and "stretched out" in its definition of "elongate" and "elongated."

Sky High argues further that the term "elongated" must include a tensile component because without such tension, the invention claimed in the '122 patent would not function. Doc. #43 at 12. Sky Zone counters that "definitions that preserve the validity of the claim are preferred." Doc. #44 at 5. Additionally, Sky Zone argues that "[e]nablement concerns do not justify departing from the plain and ordinary meaning of" a term. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374 (Fed. Cir. 2014). The Court agrees. "Where the meaning of a claim term is clear, as it is here, we do not rewrite the claim to preserve its validity. . . . Courts should be cautious not to allow claim construction to morph into a mini-trial on validity." *Id.*; *see K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, [they] give effect to the terms chosen by the patentee."). Accordingly, the Court declines to limit the definition of the term "elongated" to include a tensile component.[3]

In a Notice of Supplemental Authority, Sky Zone encouraged the Court to adopt its construction of "elongated" because "long in relation to its width" had previously been adopted by Judge Mahan and Magistrate Judge Leen in a similar patent infringement case in the District of Nevada involving Sky Zone and a different defendant. Doc. #77; *Id.*, Exhibit A. Sky High objected to Sky Zone's introduction of this supplemental authority and stressed that it was neither authoritative nor persuasive. Doc. #79 at 3. In the prior case, Magistrate Judge Leen concluded on

---

[3] In a Notice of Supplemental Intrinsic Evidence, Sky High referred to the results of a Patent and Trademark Office reexamination proceeding to support the argument that "elongated" included a tensile component. Doc. #78 at 3. Specifically, Sky High pointed to the examiner's characterization of the term "cables" in the '122 patent as "flexible" rather than "rigid" as evidence "that the term 'elongated' means that the cables need to be stretched and placed in tension in order for the sport field in the '122 patent to have a resilient platform." *Id.* The Court finds that the ordinary and customary meanings of "flexible" and "rigid" do not include a tensile force.

8

1  January 27, 2014, "that the plain and ordinary meaning of the term 'elongated' means 'long in
2  relation to its width' and adopt[ed] Sky Zone's proposed claim construction." Doc. #80-1 at 13.
3  On August 12, 2014, Judge Mahan adopted Magistrate Judge Leen's construction of "elongated."
4  Doc. #77-1 at 7.

5  Another judge's construction of a particular term is not binding on this Court, though it can
6  be persuasive. *See Visto Corp. v. Sproqit Techs., Inc.*, 445 F. Supp. 2d 1104, 1107-08 (N.D. Cal.
7  2006) (noting that *Markman,* 517 U.S. at 391, stressed the importance of intra-jurisdictional
8  conformity). Here, the Court finds—after a careful analysis of the motions, objections, and oral
9  argument—that the construction adopted by Judge Mahan and Magistrate Judge Leen is persuasive.
10 "Given 'the importance of uniformity in the treatment of a given patent,' this court would be remiss
11 to overlook another district court's construction of the same claim terms in the same patent." *See*
12 *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (9th Cir. 2008) (quoting *Markman*, 517
13 U.S. at 390). Adopting Sky High's construction of "elongated" would introduce a tensile
14 component that is not present in the language of the '122 patent, either in language or context. *See*
15 *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("This court has
16 repeatedly and clearly held that it will not read unstated limitations into claim language."). Thus, in
17 addition to understanding the benefit of maintaining conformity of construction for identical terms
18 in two cases involving the '122 patent in the District of Nevada, the Court finds that "long in
19 relation to its width" is the ordinary and customary definition of "elongated."

D. **"Means to support each of said cables at their respective extremities"**

| Sky Zone's Proposed Construction | Sky High's Proposed Construction |
|---|---|
| The function is to support each of said cables at their respective extremities. | Function - To support said cables by supplying tension at each cable's respective extremities. |
| The structure is posts and equivalents thereof. | Structure - Posts at the end of the field that exert a tensile force to support the cables. |

9

Although the parties disagree as to the ultimate construction of the term "means to support each of said cables at their respective extremities" found in claim 1(b) of the '122 patent, the parties agree that the term is subject to the requirements of 35 U.S.C. § 112 ¶6: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." While interpreting means-plus-function claims under § 112 ¶6, "courts must first identify the claimed function using traditional tools of claim construction and then determine the structure corresponding to the identified function." *Omega Eng'g*, 334 F.3d at 1330.

   **1. Function**

Sky Zone offers that the function of this term is "to support each of said cables at their respective extremities" and argues that Sky High's proposed construction improperly adds a tensile component that is not present in the language of the '122 patent. Doc. #44 at 6. Sky High argues that the term function is "to support said cables by supplying tension at each cable's respective extremities." Doc. #43 at 15. Sky High adds that language indicates that the invention "must function to support the cables by exerting a tensile force at each of the cable's respective extremities" because without such tension, the grid of cables would collapse. *Id.*

The § 112 ¶6 function analysis must rely on traditional claim construction methods, and the starting point of claim construction is always the claim language. *Vitronics Corp.*, 90 F.3d at 1584. Here, Sky Zone's proposed construction of the function of this term ("to support each of said cables at their respective extremities") is nearly identical to the language used in the '122 patent ("means to support each of said cables at their respective extremities"). Sky High's proposed construction, however, adds language not found anywhere in the patent terms that requires that the cables be supported "by supplying tension." Accordingly, an ordinary reading of the claim terms supports Sky Zone's construction of the function of "means to support each of said cables at their respective extremities."

To support its construction, Sky High points to dependent claim 3 in the '122 patent, which describes the term as including "a first vertical post of a predetermined height disposed at each corner of the rectangle, and third steel cables each extending between adjacent corner posts thereby presenting pairs of oppositely disposed parallel cables, the first and second cables being secured to extend between one of the pairs of oppositely disposed parallel third cables." Doc. #43 at 14; '122 Patent 5:35-41. Sky High argues that the terms "secured to extend" and "elongated" in claim 3 of the '122 patent imply a tensile force that is required in order for the invention to function. Doc. #43 at 15. As previously discussed, the Court finds that the ordinary and customary meaning of "elongated" does not require the presence of a tensile force. The Court also finds that the term "secured to extend" is not limited by an inherent tensile component. Section 112 "does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim." *Micro Chem., Inc.*, 194 F.3d at 1258 (finding error where the district court limited the function of the word "weighing" to mean "sequential and cumulative weighing" when the limitation was not included in the patent language).

The language of the '122 patent does not mention any requirement of tensile force, and it would be improper for the Court to read a limitation requiring tensile force into the claim language without such language in the '122 patent. *See K-2 Corp.*, 191 F.3d at 1364 ("Courts do not rewrite claims; instead, [they] give effect to the terms chosen by the patentee."). Adopting the tensile limitation suggested by Sky High would amount to re-writing the invention so that it is different from the invention that is explicitly described in the '122 patent. The Court therefore adopts Sky Zone's construction of the function "to support each of said cables at their respective extremities."[4]

///

---

[4] In its Notice of Supplemental Authority, Sky Zone encouraged the Court to adopt the construction of "means to support each of said cables at their respective extremities" previously adopted by Judge Mahan and Magistrate Judge Leen in *Sky Zone v. Flip N Out*. Doc. #77 at 2. A previous district court's interpretation of a claim term at issue can be persuasive, though not binding. *Finisar*, 523 F.3d at 1329. Because the parties stipulated to the construction of this term in the *Flip N Out* litigation, the Court does not find the prior construction of this term to be persuasive here.

**2. Structure**

Sky Zone argues that the structure of the term "means to support each of said cables at their respective extremities" is "posts and equivalents thereof." Doc. #44 at 6. Sky High's proposed construction of the structure of this term is "posts at the end of the field that exert a tensile force to support the cables." Doc. #43 at 15. As discussed *supra*, the Court declines to impose a tensile component where such a limitation is not included in the language of the '122 patent.

Sky High argues further that the posts described in the '122 patent must be situated "at the end of the field," and emphasizes that the specification of the '122 patent states that the "cables themselves are supported at the edges of the field by being secured to a plurality of vertical posts." Doc. #43 at 15; '112 Patent 1:46-47. Sky Zone argues that the language situating the posts "at the end of the field" is improper for three reasons: (1) it is vague and ambiguous as to the location of the posts; (2) the doctrine of claim differentiation prohibits reading limitations stated in dependent claims into the independent claim from which they depend; and (3) posts located not at the end of the field can also support the cables at their extremities. Doc. #44 at 7.

The structure of this term is not limited by Sky Zone's preferred embodiment in the specification of the '122 patent. The means-plus-function statute does not permit "incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc.*, 194 F.3d at 1258 (finding that "the district court erroneously overlooked alternative embodiments of the invention" when it relied on language from the specification to determine the invention's structure); *see also Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Although the specification refers to cables "supported at the edges of the field," this is not the only potential embodiment of the invention based on the language "means to support each of said cables at their respective extremities" in claim 1(b).

Sky High's proposed construction is too narrow because it again adds a requirement of tensile force not present in the language of the '122 patent and attempts to limit the invention to a single

embodiment described in the specification. Accordingly, based on the claim language of the '122 patent, read in the context of the specification and other intrinsic evidence, the Court adopts Sky Zone's proposed construction of the structure of "means to support each of said cables at their respective extremities" as "posts and equivalents thereof."

**IV.  Conclusion**

IT IS THEREFORE ORDERED that the disputed claim terms and phrases are to be construed consistent with the court's order herewith.

IT IS SO ORDERED.

DATED this 9th day of October, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE