UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SKY ZONE, LLC, | |
| Plaintiff, | 3:11-cv-0141-LRH-WGC |
| v. | |
| JERRY RAYMOND, *et al.*, | ORDER |
| Defendants. | |

This is a patent infringement case regarding an invention for a resilient field comprised of trampoline panels supported by a grid of steel cables. Before the Court is Defendants' and Counter-Claimants' Motion for Summary Judgment. Doc. #99.[1] Plaintiff Sky Zone, LLC ("Sky Zone") filed an Opposition (Doc. #129), to which Defendants replied (Doc. #131). Also before the Court is Defendants' Motion to Strike a paragraph from the expert report of Dr. Scott Schroeder. Doc. #110. Sky Zone filed an Opposition (Doc. #112), to which Defendants replied (Doc. #118).[2]

**I.     Facts and Background**

Plaintiff Sky Zone is a Nevada limited liability company that owns United States Patent No. 5,624,122 ("the '122 patent"), which discloses an invention for "a resilient playing field comprised

---

[1] Refers to the Court's docket number.

[2] Sky Zone filed a Motion to Strike Defendants' reply in support of Defendants' Motion to Strike. Doc. #119. Defendants filed an Opposition (Doc. #122), to which Sky Zone replied (Doc. #123). Due to a mistake by Defendants' counsel, the reply was filed exactly one week late. In order to most completely resolve all pending issues before the Court, Sky Zone's Motion to Strike (Doc. #119) is denied.

of trampoline panels adjacent to one another on a grid of steel cables." Doc. #43 at 2. The '122 patent explains that "the resilient field enables games where participants can perform jumping feats not possible on ground." *Id.* A copy of the patent, titled "Sport Game and Field," is attached as Exhibit A to Defendants' Motion. Doc. #99, Exhibit A.

Defendant Sky High Sports ("Sky High") is a limited liability company that provides trampoline centers at numerous locations throughout California, Oregon, and Washington. Doc. #34 ¶6. Prior to opening these trampoline centers, Defendant Jerry Raymond, a managing member of Sky High Sports, visited Sky Zone's facility in Las Vegas and discussed franchising opportunities. *Id.* ¶7.

On February 25, 2011, Sky Zone filed a Complaint against Sky High for patent infringement, alleging that Sky High's facilities infringed claims 1 through 4 of the '122 patent. Doc. #1 ¶36. In its Answer, filed on April 22, 2011, Defendants asserted six affirmative defenses to Sky Zone's claim of infringement: (1) failure to state facts sufficient to constitute a cause of action; (2) estoppel; (3) waiver; (4) laches; (5) unclean hands; and (6) statute of limitations. Doc. #34 at 5.

Sky High also asserted three counterclaims against Sky Zone: (1) declaratory judgment of non-infringement; (2) declaratory judgment of invalidity; and (3) tortious interference with prospective business relations. *Id.* at 9-10. In its Answer to Sky High's counterclaims, Sky Zone asserted eleven affirmative defenses: (1) failure to state a claim upon which relief may be granted; (2) unclean hands; (3) valid patent; (4) truthfulness; (5) economic interest; (6) interest as competitor in industry; (7) failure to mitigate damages and/or losses claimed; (8) lack of causation; (9) assumption of risk; (10) good faith; and (11) entitlement to offset. Doc. #36 at 4-5.

Claim 1 of the '122 patent, which includes the terms at issue here, describes:

///

///

///

> A supported surface for transitional movement, said surface being formed of:
> a. a grid of elongated steel cables disposed above a ground level, said grid being formed of a plurality of first parallel cables spaced from each other, and a plurality of second steel cables disposed transversely of and in abutment with the first cables, said second steel cables being parallel to, and spaced from, each other, said first and second cables defining a plurality of open spaces between the cables;
> b. means to support each of said cables at their respective extremities;
> c. a plurality of first panels, each of said first panels being formed of a yieldable heavy fabric having edges and each panel being configured to space its edges from either a first or second cable defining space;
> d. a plurality of resilient elements extending outwardly from each edge of each panel for attachment to the nearest of said first and second cables, thereby to support the panel on said first or second cables within a space defined by said cables; and
> e. a plurality of elongated cover means, the last said means each comprising a padded sheet material having a width greater than the distance between parallel edges of adjacently disposed panels, each said cover means being disposed over at least a portion of one of the first and second cables and the resilient means attached thereto and extending from the edge of a first panel.

Doc. #99, Exhibit A, '122 Patent 5:4-30.

In 2010, Sky Zone filed a patent infringement claim against another company, Flip N Out ("FNO"), pursuant to which FNO sought reexamination of the '122 patent. The examiner concluded that prior art indicated that the "first and second parallel cables of [the '122 patent] appear to form rectangular support frames that are not equivalent" to rigid box frame structures. Doc. #99, Ex. C at 6. The examiner added that such rigid support structures "are not steel cables as required by claim 1" of the '122 patent, and "cannot be considered the equivalent to steel cables." *Id.* at 5. Ultimately, the examiner confirmed the patentability of the '122 patent after finding that it was not an obvious modification of the relevant prior art. *Id.* at 4. Sky Zone did not respond to the examiner's observations about the '122 patent.

The Court entered its claim construction Order on October 9, 2014. Doc. #88. Defendants filed a Motion for Summary Judgment on January 30, 2015. Doc. #99. On April 22, 2015, the Court granted Sky Zone's Motion to Defer Consideration, and extended time to file a response to Defendants' Motion. Doc. #111. Thereafter, Sky Zone filed a timely Opposition, and Defendants filed a timely reply.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### B. Patent Infringement

A district court analyzes a patent infringement claim in two steps: (1) construing the claims as a matter of law, and (2) applying the properly construed claims to the accused invention. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir.1999); *EMI Grp. N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998). Infringement can occur either literally or under the doctrine of equivalents. *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 147-78 (Fed. Cir. 1998). In this matter, Defendants' patent infringement claim alleges only a doctrine of equivalents infringement claim of the '122 patent. A party can be liable for patent infringement under the doctrine of equivalents if it has only made insubstantial alterations to a patent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1377 (Fed. Cir. 2007) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608-10 (1950)). Thus, "a patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Graver*, 339 U.S. at 608 (internal citation omitted). In order for a patent owner to voluntarily limit the scope of an invention, she must "clearly and unmistakably" disclaim a particular scope. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1342 (Fed. Cir. 2012). The doctrine of equivalents "requires an intensely factual inquiry," and the summary judgment standard "sets a high hurdle" for such cases. *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000).

### III. Discussion

The Court first considers Defendants' Motion to Strike, because Sky Zone refers to the paragraph that Defendants want stricken in its Opposition to Defendants' Motion for Summary Judgment.

### A. Motion to Strike

Defendants urge the Court to strike paragraph forty of Sky Zone's expert Dr. Scott Schroeder's ("Dr. Schroeder") February 20, 2015, expert report and Dr. Schroeder's subsequent March 23, 2015, declaration. Defendants argue (1) that the statements in Dr. Schroeder's

5

March 23, 2015, declaration constituted an improper attempt to extend the expert report due date under Federal Rule of Civil Procedure 26(e); and (2) that Dr. Schroeder's doctrine of equivalents analysis in paragraph forty of his February 20, 2015, expert report is legally improper under Supreme Court and Federal Circuit case law.

First, it is immaterial that Dr. Schroeder's declaration was filed after the initial expert report deadline because Federal Rule of Civil Procedure 26(e)(2) states that any supplement to an expert report must be filed prior to the date that pretrial disclosures under Rule 26(a)(3) are due. Dr. Schroeder submitted his initial expert report on February 20, 2015, the due date identified in the Magistrate Judge's January 14, 2015 scheduling order. Doc. #97. Dr. Schroeder's declaration was filed on March 23, 2015, one month before the due date for rebuttal expert disclosures set by the Magistrate Judge's March 18, 2015, scheduling order. Doc. #104. Sky Zone notes that Dr. Schroeder's declaration only included "the results of testing conducted after the deadline to serve initial experts reports and a brief analysis of how that testing is relevant." Doc. #112 at 2. Additionally, the tests—which occurred on March 12, 2015—"were conducted with the knowledge and consent of Defendants, in the presence of Defense counsel and their expert Dr. Jeffrey Ball, at a mutually agreed-upon date, time, and place."[3] *Id.* Accordingly, Dr. Schroeder's declaration was submitted within the pretrial disclosures time frame, with Defendants' participation, and should not be stricken for lack of timeliness.

Second, Defendants are correct that "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29. Courts must also undertake an "analysis of the role played by each element *in the context* of the specific patent claim." *Id.* at 40 (emphasis added). Defendants argue that the Court should strike paragraph forty of Dr. Schroeder's expert report because this analysis conflated two separate elements: "elongated grid of steel cables" and "support means." Doc. #110 at 7. Sky Zone argues

---

[3] Sky Zone adds that the declaration was filed in good faith "one month before Defendants' expert disclosures were due, approximately 2.5 months before the close of discovery, and before expert depositions had (or have) been scheduled. Doc. #112 at 2-3.

6

1  that Dr. Schroeder did not conflate these elements, but merely stated "that the fact that Defendants'
2  intermediate support posts have springs evidences the fact that the Defendants' allegedly 'rigid'
3  tubes are not fully rigid as Defendants claim." Doc. #112 at 3-4.  For example, if the steel poles
4  comprising the support structure were in fact rigid, then the poles would never deflect downward
5  and the springs attached to the intermediate support posts would be useless. *Id.* at 4.

6  The paragraph challenged by Defendants is relevant because a large portion of Defendants'
7  Motion for Summary Judgment relies on the purported rigidity of the Sky High design.  Defendants
8  have not cited any authority stating that a court must strike expert testimony that uses language of
9  one element of a claim to help interpret another element.  Importantly, *Warner-Jenkinson* applies to
10  how the court should interpret elements of a claim, not whether a court should strike an expert's
11  report for failure to meet those guidelines.  *See* 520 U.S. at 29.  Additionally, *Warner-Jenkinson*
12  contemplates viewing each element in the context of a particular claim. *Id.* at 40.  Thus, while
13  Defendants are correct that the court ultimately must apply the doctrine of equivalents separately to
14  individual elements, this does not mean that a court must strike portions of an expert's report that
15  use claim language to help analyze the role of other elements in the claim.  Accordingly, the Court
16  denies Defendants' Motion to Strike.

17  **B. Motion for Summary Judgment**

18  **1. Sky Zone Is Not Estopped from Pursuing Doctrine of Equivalents**

19  Defendants argue that Sky Zone is estopped from pursuing its doctrine of equivalents patent
20  infringement claim because it did not respond when the examiner in another patent infringement
21  action found that the '122 patent did not encompass the rigid structure that Defendants claim is
22  more equivalent to their trampoline system.  Defendants urge estoppel based on two separate legal
23  theories: acquiescence and argument-based estoppel.  Sky Zone argues that it did not "clearly and
24  unmistakably" disclaim the potential scope of the '122 patent to apply to Defendants' trampoline
25  systems when it did not respond to the examiner's report.  Sky Zone adds that the prosecution
26  history, viewed in its entirety, supports its claim that Defendants infringed the '122 patent.

The Court first considers whether Sky Zone is estopped from pursuing its doctrine of equivalents claim under the law of acquiescence. Prior to 2000, federal regulations regarding patent examinations provided that in response to an examination, the patent owner could "file a statement commenting on the reasons for allowance within such time as may be specified by the examiner. Failure to file such a statement shall not give rise to any implication that the applicant or patent owner agrees with or acquiesces in the reasoning of the examiner." 37 C.F.R. § 1.109 (1996); *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005). A 2000 amendment omitted the language stating that failure to file a statement following an examination did not give rise to an inference of acquiescence. *See* 37 C.F.R. § 1.104(e). This amendment was made because the prior language was not consistent with recent United States Supreme Court and Federal Circuit Court of Appeals decisions that emphasized "the crucial role a prosecution history plays in determining the validity and scope of a patent." Changes to Implement the Patent Business Goals, 65 Fed. Reg. 54,604, 54,633 (Sept. 8, 2000). The Federal Register emphasized that the deletion of this sentence "should require applicant to set forth his or her position in the file if he or she disagrees with the examiner's reasons for allowance, or be subject to inferences or presumptions to be determined on a case-by-case basis by a court reviewing the patent." *Id.*

Few courts have analyzed the deletion of this sentence, but one court stated that it indicated that failure to respond "alone can provide definitive evidence for claim interpretation unless the application overcomes the presumption of acquiescence." *Moneysuite Co. v. Ins. Answer Ctr., LLC*, No. 11-1847, 2013 WL 6925942, at *9 (C.D. Cal. Mar. 25, 2013) (quoting Meyer & Reed, *Respond or Regret: Reasons for Allowance May Prove Damaging if Not Responded to by Applicants Under the New Rule 104(e) Presumption*, 12 Fed. Cir. B.J. 89, 96 (2002)). Since the amendment, however, the Federal Circuit has continued to hold that "the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage, such as an amendment to overcome a rejection." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003). At least one court cited this language as an

8

indication that the amended regulation does not require courts to draw an adverse inference from a patent holder's failure to respond to an examiner's report. *Eolas Techs. Inc. v. Microsoft Corp.*, No. 99-0626, 2007 WL 7597509, at *17 n.18 (N.D. Ill. July 17, 2007). Rather, "the relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Conoco, Inc. v. Energy & Envtl. Int'l LC*, 460 F.3d 1349, 1364 (Fed. Cir. 2006).[4] Thus, courts must undergo a case-by-case analysis to determine whether a particular scope has been "clearly and mistakably" disavowed. *See id.* ("Here, for instance, there is clear surrender of metal stearates, but there has not been a clear surrender of other possible equivalents.").

Reviewing the prior art, the examiner in the related FNO case found that the '122 patent was not obvious following U.S. Patent No. 3,233,895 to Grelle ("the Grelle patent") because "Grelle teaches a framework of rigid support members forming a crisscrossing pattern of support around the panels, these rigid support members 29 are not steel cables as required by claim 1. The rigid support members 29 cannot be considered the equivalent to steel cables." Doc. #99, Ex. C at 5. The examiner added that the rectangular support frames created by parallel cables in the '122 patent "are not equivalent to the 'box frames' of Grelle. The 'box frames' of Grelle are *rigid* frame structures." *Id.* at 6. Finally, the examiner stated that the Grelle "box frames" are distinct from the '122 patent because they "are capable of supporting the weight of a person walking on it . . . . This rigid structure is not equivalent to the flexible cables as required in claim 1" of the '122 patent. *Id.* Defendants argue that Sky Zone acquiesced to these findings because it did not refute or otherwise respond to the examiner's report.

The examiner was clear that the '122 patent is not equivalent to a device that relies on a rigid "box frame" structure that can support a person walking across the grid. Thus, Sky Zone

---

[4] *Conoco* involves argument-based estoppel, whereas Defendants' argument involves prosecution history acquiescence. The Federal Circuit applies the "clear and unmistakable" standard to both doctrines. *See Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324-26 (Fed. Cir. 2003)) ("'[F]or prosecution disclaimer to attach our precedent requires that alleged disavowing actions or statements made during prosecution be both clear and unmistakable.' . . . [T]he same standard applies to the doctrine of argument-based estoppel.").

would be estopped from asserting a doctrine of equivalents claim against a device that was in fact rigid, and that was supported by "box frames" similar to Grelle rather than something akin to steel cables. *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1333 (Fed. Cir. 2009) (holding that doctrine of equivalents cannot be used to "reclaim what was disclaimed during prosecution and throughout the specification"). As discussed below, however, disputed questions of material fact remain as to whether the Sky High design is in fact rigid, and whether the Sky High support structure operates like Grelle, or is more equivalent to the design articulated by the '122 patent.[5] Because disputed questions of material facts remain as to whether Sky High's design is rigid, the Court finds at this time that any acquiescence by Sky Zone to the examiner's findings in the FNO action does not obviate that Sky Zone is estopped from asserting a doctrine of equivalents claim against these Defendants.

The Court now considers whether Sky Zone is estopped from asserting a doctrine of equivalents claim against Defendants under the law of argument-based estoppel. Defendants acknowledge that argument-based estoppel applies when the patentee makes affirmative statements that narrow the scope of a claim, and that such disavowal of a claim scope must be clear and unambiguous. Doc. #131 at 6; *see Conoco*, 460 F.3d at 1364. Defendants then argue that because Sky Zone did not respond to the examiner's report, "it is as if Plaintiff argued those words itself in order to obtain its reexamination certificate." Doc. #131 at 7. This argument incorrectly blurs the line between argument-based estoppel and acquiescence. The cases Defendants cite in support of this position are not applicable to Sky Zone's non-response to the examiner's report. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 978-79 (Fed. Cir. 1999) (applying argument-based estoppel primarily based on the patent holder's affirmative statements narrowing the scope of a

///

///

---

[5] Defendants acknowledge that the "box frames" in Grelle were not just supported by steel tubes or poles, like the Sky High design, but by a number of other materials that could impact rigidity. Doc. #131 at 9.

claim);[6] *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1316-17 (Fed. Cir. 2010) (applying argument-based estoppel because the patent holder's affirmative statements expressly narrowed the scope of its patent, not based on silence in response to an examiner's report); *Canton Bio Med., Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1371 (Fed. Cir. 2000) (applying argument-based estoppel based on the patent holder's affirmative response to the examiner's report). Argument-based estoppel does not apply because Sky Zone never made affirmative statements to limit the scope of the '122 patent.

Again, Defendants have not established that the examiner's statements regarding the rigidity of the prior art compared to Sky Zone's design should be extended to the Sky High design. As such, Sky Zone's non-response does not constitute a "clear and unmistakable" acquiescence to any limitation of the '122 patent's scope to estop Sky Zone's claim against these Defendants. Importantly, Defendants have not conclusively established that their trampoline system is identical or analogous to the Grelle patent's rigid frame model discussed in the examiner's report. Accordingly, Sky Zone is not estopped from asserting its doctrine of equivalents claim against Defendants.

### 2. Defendants' Ensnarement Defense

Defendants raise an ensnarement defense to support their claim for noninfringement. Specifically, Defendants argue that the prior art reviewed by the examiner indicates that "rigid support structures such as steel poles were indisputably well known and used before the '122 patent issued." Doc. #99 at 16. Defendants refer primarily to the Grelle patent. *See id.* The Grelle patent involved "box frames" that created a rigid surface between individual trampoline platforms that enabled individuals to walk between surfaces without any bounce effect. *Id.*, Ex. C at 6. The

---

[6] Defendants argue that *Elkay* stands for the proposition that the patent holder "was precluded from arguing infringement under DOE in light of silence in response to reasons for allowance." Doc. #131 at 7. However, the court based its estoppel ruling on the patent holder's affirmative statements in response to the examiner's first report. 192 F.3d at 979 ("[W]hen Elkay made this argument it necessarily relinquished a construction of its claim language that could include separate feed tubes."). The court noted that Elkay did not respond to a subsequent statement by the examiner, but this was not the basis for the court's decision to apply argument-based estoppel.

examiner determined that analysis of Grelle as prior art did not render the '122 patent obvious because rigid support box frames "cannot be considered the equivalent to steel cables," and it did not "suggest using first and second transverse cables to form a grid to support a plurality of trampolines." *Id.*

"Ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009). "A helpful first step in an ensnarement analysis is to construct a hypothetical claim that literally covers the accused device." *Id.* at 1324. "Next, the district court must assess the prior art introduced by the accused infringer and determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *Id.* at 1325. If such a claim would be unpatentable, "then the patentee has overreached, and the accused device is noninfringing as a matter of law" under the doctrine of equivalents. *Id.* (quoting *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001)). "The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer, but the burden of proving patentability of the hypothetical claims rests with the patentee." *Interactive Pictures Corp.*, 274 F.3d at 1380.

Sky Zone asserts that for the purposes of the ensnarement defense, a hypothetical claim that would be literally infringed by Sky High's design is created by replacing the term "steel cable" with "steel cable or tube." Doc. #129 at 11.[7] Defendants did not directly address Sky Zone's proposed hypothetical claim, but argued that Sky Zone's doctrine of equivalents claim would improperly ensnare the Grelle patent because Grelle was supported not by flexible cables but by a rigid structure, which Defendants claim is similar to Sky High's design.

The Court agrees with the examiner that the Grelle patent did not render obvious creating a trampoline system by using first and second transverse tables to form a grid. *See* Doc. #99, Ex. C

---

[7] Sky Zone adds that although the use of steel cables to form the structure for their trampolines was not in itself novel, the examiner still found that the '122 patent is not obvious creation following the Grelle patent. Doc. #129 at 11.

at 6. Additionally, the proposed hypothetical claim, involving "an enlongated grid of steel cables *or tubes*," also would not be rendered obvious by Grelle's use of rigid platforms between trampoline surfaces. Defendants argue that this result improperly allows Sky Zone to expand the scope of its claim past the examiner's limitations based on the observation that "rigid support structures are not the equivalent of flexible steel cables." Doc. #131 at 10. This argument fails because disputed questions of fact remain as to whether the tubes in Sky Zone's hypothetical claim are flexible, or whether the Sky High design includes a rigid support structure similar to the Grelle patent's "box frames." Defendants therefore have not met their burden to produce evidence of prior art that renders the hypothetical claim unpatentable. Accordingly, the Court declines to grant summary judgment in Defendants' favor based on their ensnarement defense.

### 3.   Material Questions of Fact Remain

Defendants' summary judgment argument is based largely on their contention that the prosecution history indicates that rigid support means are not equivalent to flexible steel cables. This argument only succeeds if Defendants establish that the Sky High design is rigid—like Grelle's "box frames"—and therefore not equivalent to flexible steel cables.

To establish non-infringement under the doctrine of equivalents and justify summary judgment against Sky Zone, Defendants must conclusively refute Sky Zone's contention that "the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). Summary judgment should not be granted if disputed questions of material fact remain as to whether the accused product "performs substantially the same function in substantially the same way to obtain the same result.'" *Graver*, 339 U.S. at 608 (internal citation omitted). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29. However, district courts are instructed to consider "[a]n analysis of the role played by each element in the context of the specific patent claim." *Id.* at 40. The doctrine of equivalents

13

"requires an intensely factual inquiry," and the summary judgment standard "sets a high hurdle" for such cases. *Vehicular Techs.*, 212 F.3d at 1381.

Sky Zone identifies a number of remaining factual disputes regarding whether Sky High's system uses the "rigid support structures" that they claim were encompassed by the prior art. First, Sky Zone's expert Dr. Schroeder testified that a grid of steel tubes performed the same function as a grid of steel cables used in this context: supporting a grid of trampoline panels in a unified and flexible manner. Doc. #129, Ex. 1 at 13 ¶37. To form this opinion, Dr. Schroeder relied partially on Defendant Jerry Raymond's statement that the Sky High system uses "spring-loaded posts to support the grid of steel tubes," indicating that it gives when someone lands on the trampoline. *Id.* at 13; *id.*, Ex. 1 at 14 ¶40. If Sky High's design was truly "rigid and inflexible," Dr. Schroeder concluded, the spring-loaded posts "would not serve their stated function of 'impact absorption'" because a rigid structure could not "deflect downward and engage the support posts' springs." *Id.*, Ex. 1 at 14 ¶40.

Defendants argue that Dr. Schroeder conceded at his June 26, 2015, deposition that the steel poles or tubes that form the structure for Sky High's design are rigid. Dr. Schroeder stated consistently throughout his deposition that there is no engineering definition for "flexible" or "rigid."[8] Dr. Schroeder acknowledged, however, that compared to Sky Zone's steel cables, Sky High's thicker steel pipes had "higher stiffness." Doc. #131, Ex. G at 151:7-13. Contrary to Defendants' assertion, this does not establish that no trier of fact could determine that Sky High's steel poles were not flexible or equivalent to Sky Zone's steel cables. In fact, Dr. Schroeder also testified that placing weight in the middle of a steel pole—like the steel poles present in the Sky High design—would cause the pole to flex. *Id.* at 74:4-19; 79:20-80:11. Dr. Schroeder stopped short of calling such a pole "flexible" due to the lack of an engineering definition for "flexible," but

---

[8] Defendants argue that Dr. Schroeder's refusal to give a definition of these terms due to the lack of engineering definitions indicates that Sky Zone could not prove infringement at trial. The Court disagrees, as it is for the finder of fact to determine whether the accused infringing product included a flexible or rigid support structure.

did state that this effect could be described as "flexing." *Id.* at 74:10-19. Defendants' attorney later presented a scenario wherein less weight was placed in the middle of the same steel pole, asking "is that pole flexible under your definition?" *Id.* at 79:20-80:10. Dr. Schroeder responded "Yes. You can flex it. It does move." *Id.* at 80:11. The Court finds that Dr. Schroeder's reluctance to invent an engineering definition for "flexible" cannot, at the summary judgment stage, be considered an acknowledgment that the Sky High design is rigid, especially in light of Dr. Schroeder's statements that Sky High's poles bend and flex.

Next, Defendants argue that Dr. Schroeder conceded that Sky High's support structure was rigid because he stated that the steel poles used by Sky High could be interchangeable with some of the material used in the support structure for the Grelle patent. In this portion of his deposition, Dr. Schroeder was asked to interpret the portion of the Grelle patent that called for a "tubular frame member." *Id.* at 295:1-21. In response to Defendants' question, Dr. Schroeder stated that nothing in the Grelle patent indicated that Sky High's steel poles could not be used as Grelle's "tubular frame member." *Id.* at 296:9-19. However, this does not constitute an admission that the Sky High design is rigid like the Grelle design. Importantly, Defendants acknowledge that the Grelle patent includes other materials that could impact rigidity and define Grelle's "box frames." *See* Doc. #131 at 9.

A complete reading of Dr. Schroeder's testimony therefore raises a genuine question of material fact as to whether Sky High's support structure was flexible, and Dr. Schroeder's acknowledgment that different materials have different levels of flexibility does not resolve this question in Defendants' favor. For purposes of summary judgment, courts must accept a plaintiff's expert's factual assertions as true so long as the expert properly applies the "function-way-result" or "insubstantial differences" analysis. *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1380-81 (Fed. Cir. 2013). Here, Dr. Schroeder unambiguously found that the Sky High design performed the same function as the '122 patent in substantially the same manner and identified the factual support for his opinion based on engineering standards. *See, e.g.*, Doc. #129,

Ex. 1 at 13 ¶37 ("A grid of tubes performs substantially the same function in substantially the same way to obtain substantially the same result as a grid of cables."). Thus, Dr. Schroeder's expert testimony creates a genuine question as to whether the Sky High design's steel tubes are flexible, and Defendants have not adequately refuted Dr. Schroeder's testimony to justify entering summary judgment in their favor. *See Vehicular Techs.*, 212 F.3d at 1381 (finding that the doctrine of equivalents requires an "intensely factual inquiry").

Additionally, Defendants' expert Dr. Jeffrey Ball ("Dr. Ball") testified that Sky High's tube-based frame flexes when a person lands on the trampoline, just as Sky Zone's design flexes when a person lands on the trampoline. *Id.*, Ex. 3 at 89:5-92:12. As part of this statement, Dr. Ball stated that the outer edges of the trampoline would remain rigid, while adjacent panels would slant toward the panel bearing the person's weight. *Id.* Defendants argue that Sky Zone misstates Dr. Ball's testimony, and emphasizes that these statements by Dr. Ball were based on a design with "certain assumptions," and that this hypothetical design was not the same as the Sky High system. In particular, Dr. Ball stated that he exaggerated the hypothetical design to assume very soft springs. Defendants added that Dr. Ball later testified that this hypothetical design was more similar to the Grelle patent than the '122 patent. These characterizations of Dr. Ball's testimony do not render the statements irrelevant. Importantly, Sky Zone concedes that the Sky High design does not literally infringe the '122 patent. The question before the Court is whether the design infringes under the doctrine of equivalents—in other words, whether it operates in substantially the same manner as the '122 patent. Dr. Ball testified that a hypothetical design with steel pole support structures—and very soft springs—would deflect downward toward the panel in which an individual was jumping. This supports Sky Zone's argument that a genuine question of material fact remains regarding whether Sky High's steel poles operate in substantially the same manner to achieve substantially the same result as Sky Zone's steel cables.

Again, to determine whether Sky Zone can prevail under the doctrine of equivalents, the Court must apply the doctrine "to individual elements of the claim, not to the invention as a

whole," with attention paid to the context of said elements within the claim. *Warner-Jenkinson*, 520 U.S. at 29, 40. Defendants' Motions only discussed the first two elements of the '122 patent with any detail.[9] The Court previously held that for the purposes of the '122 patent's first element, an "elongated" steel cable is defined as "long in relation to its width." Doc. #88 at 9.[10] Defendants' steel poles or tubes are also long in relation to their width. A reasonable juror could therefore find that this element of the '122 patent was infringed by the Sky High design under the doctrine of equivalents if said juror found that the steel poles or tubes performed substantially the same function as Sky Zone's steel cables.

The Court also interpreted the second element, "means to support each of said cables at their respective extremities," and found that the function of this element "is to support each of said cables at their respective extremities" and the structure "is posts and equivalents thereof." *Id.* at 10-13. The Court explicitly declined to adopt Defendants' construction of the structure, which would require posts "at the end of the field that exert a tensile force to support cables." *Id.* at 12-13. The Court's construction therefore does not preclude application to intermediate support posts. Defendants' Motion does not refute that Sky High's design has a means to support the steel poles or tubes at their extremities, or that the design includes posts or their equivalents. Accordingly, a reasonable juror could find that this element of the '122 patent was infringed by the Sky High design under the doctrine of equivalents if said juror found that the function and structure of Sky High's support frame operated in substantially the same manner as Sky Zone's support frame. Defendants did not put the remaining elements at issue in their Motion for Summary Judgment.

As discussed above, Defendants have failed to establish that no genuine question of material fact remains upon which a reasonable juror could find the Sky High design infringes upon

---

[9] Despite urging in its Motion to Strike that the Court must undertake an element-by-element analysis of the claim, Defendants' Motion for Summary Judgment is nearly devoid of discussion of the elements of the '122 patent as they apply to Sky High's design. Rather, Defendants' Motion focuses largely on estoppel and Defendants' ensnarement defense. *See* Doc. #99.

[10] The Court explicitly declined to "introduce a tensile component that is not present in the language of the '122 patent, either in language or context." Doc. #88 at 9.

the '122 patent under the doctrine of equivalents.  Additionally, Sky Zone has met its burden to identify the specific facts that could support its claim that the Sky High design is equivalent to the Sky Zone design.  Accordingly, the Court denies Defendants' Motion for Summary Judgment.

**IV.	Conclusion**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. #99) is DENIED.  The parties shall file a joint pretrial order with forty-five (45) days of this Order.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (Doc. #110) is DENIED.

IT IS FURTHER ORDERED that Sky Zone's Motion to Strike (Doc. #119) is DENIED.

IT IS SO ORDERED.

DATED this 4th day of September, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE